**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **JESUS PIEDRAHITA-BELLO** | **CIVIL DOCKET NO. 6:26-CV-01338** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# MEMORANDUM ORDER

Before the Court is the Report and Recommendation ("R&R") of the Magistrate Judge previously filed herein. [Doc. 16]. The R&R recommends the release of Petitioner Jesus Piedrahita Bello ("Petitioner" or "Piedrahita-Bello") on the ground that his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001). No objections were filed. The Court nevertheless conducted a *de novo* review of the R&R and held an evidentiary hearing *sua sponte* to further develop the factual record.[1] [Doc. 23]. Having considered the arguments, applicable law, and the record, including the evidence presented at the evidentiary hearing, the Court declines to adopt the R&R and DENIES the Petition for Writ of Habeas Corpus. [Doc. 1].

[1] Although Petitioner's counsel suggests that the absence of objections limits the Court's review, it does not. Section 636(b)(1)(C) does not preclude a district judge from conducting further review *sua sponte*, including *de novo* review, even when no objections are filed. *Thomas v. Arn*, 474 U.S. 140, 154, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985) (explaining that the statute "does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard," and approving the district court's *de novo* determination despite the petitioner's failure to object). *See also Younce v. Barnhart*, 98 F. App'x 305, 306 (5th Cir. 2004) (accord), *citing Thomas*, 474 U.S. at 154. The factual narrative that follows therefore incorporates the relevant facts established in the record before the Magistrate Judge as well as those developed at the evidentiary hearing.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Piedrahita-Bello is a native and citizen of Cuba who entered the United States on or about July 18, 1995, and was paroled into the country. [Doc. 12 at p. 1; Doc. 12-3 at p. 1]. On April 26, 2006, he was convicted of felony drug possession and trafficking and sentenced to four years of imprisonment. *Id.* According to the Government opposition brief, on October 1, 2007, an immigration judge ordered him removed *in absentia*.

Piedrahita-Bello was subsequently detained by Immigration and Customs Enforcement ("ICE") on September 1, 2009, but was later released under an Order of Supervision on November 30, 2009. [Doc. 12 at p. 2; Doc. 12-3 at pp. 1-2]. He remained released on supervision until October 23, 2025, when ICE re-detained him after he was arrested in Florida for possession of drug paraphernalia. *Id.* Piedrahita-Bello is currently detained at Pine Prairie ICE Detention Center. Cuba denied his repatriation on November 4, 2025, and ICE thereafter began pursuing third-country removal. *Id.*

On December 29, 2025, ICE served Piedrahita-Bello with notice of its intent to remove him to Mexico, which he refused to sign. [Doc. 12-3 at p. 2]. ICE nevertheless "allocated" him for third-country removal to Mexico on January 26, 2026. *Id.* ICE thereafter attempted to remove Piedrahita-Bello to Mexico twice. The first attempt occurred in January 2026 and was unsuccessful for reasons not identified in the record. The second attempt occurred on March 30, 2026, when Piedrahita-Bello was transported by bus to a port of entry on the southwest border. Piedrahita-Bello

refused to leave the bus, and the removal attempt was unsuccessful. *Id.* He was returned to Pine Prairie on April 1, 2026.

After the March 2026 removal attempt, Piedrahita-Bello's custody was reviewed and he was served with a Form I-229, Notice of Warning for Failure to Depart, in August 2026, approximately two weeks before the Court's evidentiary hearing. Piedrahita-Bello again refused to sign. When asked whether he would go to Mexico, he reportedly stated that he would not go because his family was in the United States. In his habeas petition, Piedrahita-Bello asserts that Mexico refused to accept him because of a medical condition, and he fears removal to Mexico. [Doc. 1-2 at p. 3]. Nothing else in the record substantiates this claim and Petitioner declined to provide the Court with any evidence at the evidentiary hearing.

The Magistrate Judge conducted the burden-shifting analysis under *Zadvydas* and concluded that the Government had failed to carry its burden of demonstrating a significant likelihood of Piedrahita-Bello's removal in the reasonably foreseeable future, relying primarily on the Declaration of Assistant Field Office Director Charles Ward ("Ward"). [Doc. 16]. Neither party objected to the Magistrate Judge's recommendation to release Piedrahita-Bello. But finding that the record was underdeveloped, particularly regarding the history of Piedrahita-Bello's immigration case, the Government's prior removal efforts, and its future plans for removal, the Court conducted an evidentiary hearing on September 9, 2026, to allow the parties to clarify the record. The only witness who testified was the Government's witness, Agent Brant Lee McCullough, a Supervisory Detention and Deportation Officer with ICE's Enforcement and Removal Operations ("ERO").

Agent McCullough confirmed that ICE served Piedrahita-Bello with a third-country removal notice in approximately December 2025, which he refused to sign. McCullough testified that, at the time, there was a tentative agreement with Mexico to accept Piedrahita-Bello. Agent McCullough confirmed both ICE attempts to remove Piedrahita-Bello to Mexico, the first in January 2026, and the second in March 2026. Agent McCullough further testified that Piedrahita-Bello was medically cleared for removal, nothing in his file indicated a medical condition preventing removal to Mexico, and there was no evidence that Mexico had refused Piedrahita-Bello because of a medical condition. Agent McCullough also testified that Piedrahita-Bello has not asserted a fear claim concerning his removal to Mexico to ERO.[2]

## LAW AND ANALYSIS

After an alien is ordered removed, the Government generally has 90 days — the statutory "removal period" — within which to effectuate the alien's removal. 8 U.S.C. § 1231(a)(1)(A). That period, however, may be extended when the alien fails or refuses to make timely application in good faith for travel or other documents necessary for departure, or otherwise acts to prevent his removal. 8 U.S.C. § 1231(a)(1)(C). Thus, § 1231 permits detention beyond the initial 90-day period when the alien's own conduct prevents or hampers removal. *Id.*

[2] According to Agent McCullough, if a noncitizen expresses a fear of removal to a third country, ERO refers the matter for a reasonable-fear assessment through U.S. Citizenship and Immigrations Services ("USCIS"); no such assessment has occurred here.

In *Zadvydas v. Davis*, the Supreme Court construed § 1231 to permit detention beyond the 90-day removal period for an additional period reasonably necessary to effectuate removal, while recognizing constitutional limits on potentially indefinite detention. 533 U.S. 678, 699–701 (2001). The Court held that detention for up to six months following the beginning of the removal period is generally considered "presumptively reasonable." *Id.* at 701. The six-month period is not, however, an absolute limit on detention. Rather, after six months, if the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id.*; *see also* 8 C.F.R. § 241.13 (setting forth the *Zadvydas* procedures). The petitioner bears the initial burden of demonstrating that no such likelihood of removal exists, and that showing must be supported by more than mere "speculation and conjecture." *See Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006); *Idowu v. Ridge*, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003), *citing Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002).

Courts have also recognized that where an alien's own conduct obstructs or prevents his removal, the *Zadvydas* analysis may not be triggered at all, because an alien cannot establish that there is no significant likelihood of removal in the reasonably foreseeable future when his own conduct is preventing the Government from effecting that removal. In *Anadji v. Keisler*, the court explained that *Zadvydas*'s burden-shifting analysis is not necessary in a case where a detainee acts to thwart his removal by refusing to cooperate, and that such claims are, rather, analyzed under § 1231(a)(1)(C). 2008 WL 11388565, at *6 (S.D. Tex. June 26, 2008), *report and*

*recommendation adopted*, 2008 WL 11388548 (S.D. Tex. July 15, 2008). Under that statute, the government may hold an alien detainee for longer than the presumptively reasonable period if the detainee is not cooperative or takes affirmative steps that directly prevent removal. *Id.* In *Anadji*, the court denied petitioner's habeas petition where the record showed that the government twice attempted to remove Anadji but was unable to do so because of his physical resistance to boarding an airplane. *Id.*; *see also Torres v. Tate*, 2026 WL 2455365, at *1 (S.D. Tex. Aug. 21, 2026) (finding that *Zadvydas's* burden-shifting analysis was not necessary and the petitioner, a citizen of Cuba, was not entitled to release where he repeatedly refused to sign notices authorizing his removal to Mexico, causing Mexican Immigration to deny his acceptance); *Zehra v. Noem*, 2026 WL 2271347, at *2 (S.D. Tex. Aug. 6, 2026) ("Petitioner has refused to participate in an interview for Review of Custody twice, has declined to provide a third country of removal to ICE ERO, has failed to provide evidence of compliance with the previous removal order, [and] has refused to sign the I-229, has refused to make a timely, good application for travel documents necessary to depart the United States, and has stated that she would not complete an application for travel documents."); *Yoelkys Martinez Diaz v. Acuna*, Civil Action No. 26-1462 (W.D. La. Sept. 14, 2026) (vacating Magistrate Judge's recommendation of release and finding petitioner was not entitled to *Zadvydas* relief where petitioner refused to physically exit his pod for removal to Mexico).

Here, the analysis in the R&R does not adequately account for Piedrahita-Bello's own conduct in preventing the March 30, 2026, removal effort from going forward. Although the Magistrate Judge recognized cases in which an alien's

obstructive conduct extended the removal period, the Magistrate Judge distinguished those cases on the ground that the petitioners had delayed their removal through conduct such as refusing to provide or withholding travel documentation.[3] The governing jurisprudence, however, is not so narrowly confined. Clearly, the law does not permit an alien with a final removal order to frustrate his own removal and then rely on the resulting delay to obtain release under *Zadvydas*.

Like the petitioners in *Anadji* and *Torres,* Piedrahita-Bello repeatedly refused to sign notices authorizing his removal to Mexico. He also directly thwarted the Government's removal process when he was transported by bus to a port of entry on the southwest border and refused to disembark. And just two weeks ago, Petitioner reaffirmed to ICE agents that he was not willing to be removed to Mexico.[4] Given these actions and the Petitioner's background – including his federal narcotics conviction and more recent arrest in Florida for possession of drug paraphernalia – the Government certainly has a legitimate interest in effecting its final order of removal against Petitioner. Moreover, Piedrahita-Bello was afforded an opportunity at the evidentiary hearing to testify and present any circumstances that might bear on his ability or willingness to be removed, including a medical condition preventing removal or a credible fear of removal. He declined to do so. The record thus

---

3 *See Gonzalez v. Gills*, 2022 WL 1056099, at *1–2 (5th Cir. Apr. 8, 2022) (petitioner's use of false and conflicting identities hindered efforts to effectuate his removal); *Blankson v. Mukasey*, 261 F. App'x 758, 759 (5th Cir. 2008) (petitioner's frequently changing claims of citizenship hampered DHS's ability to determine the proper country of removal).

4 The Court also notes that Petitioner's time in custody would have already terminated had he cooperated with removal efforts. Agent McCullough testified that detainees removed to Mexico are not subject to detention in that country.

demonstrates that the impediment to removal is not an external circumstance beyond Piedrahita-Bello's control, but rather his own repeated refusal to cooperate with the Government's removal efforts. Indeed, the Government's inability to remove him is attributable to the "consistent refusals to cooperate by the alien," rather than to "external matters over which the alien has no control." *See Anadji*, 2008 WL 11388565, at *6. Accordingly, Piedrahita-Bello's continued detention is justified under § 1231(a)(1)(C), and his Petition should be denied.

**CONCLUSION**

IT IS HEREBY ORDERED that the Court VACATES the Report and Recommendation of the Magistrate Judge and the Petition for Writ of Habeas Corpus filed by Jesus Piedrahita Piedrahita-Bello is DENIED AND DISMISSED WITHOUT PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 15th day of September 2026.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE